Opinion issued February 3, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00974-CR

———————————

CEDRIC COTTRELL EVANS, Appellant

V.

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 339th District Court

Harris County, Texas



Trial Court Case No. 1077372

 



 

 

MEMORANDUM OPINION

A jury
found appellant, Cedric Cottrell Evans, guilty of the offense of murder[1] and assessed his punishment
at confinement for thirty-five years.  In
two points of error, appellant contends that the evidence is factually
insufficient to support his conviction and his trial counsel provided
ineffective assistance of counsel at both the guilt and punishment phases of
trial.

We affirm.

Factual Background

          Victor
Gordon testified that on July 20, 2006, his friend, the complainant, Santos
Harris, was at Gordon’s apartment waiting for a ride.  At approximately 5:00 p.m., appellant, also
Gordon’s friend, came to the apartment and asked for the complainant.  Gordon, appellant, and the complainant then
sat down on furniture in the living room and talked.  Gordon did not sense any hostility between
the complainant and appellant, and Gordon explained that they were just
“hanging out.”  After a short time, appellant
left the apartment.  When appellant
returned twenty minutes later, Gordon did not notice “much anything
different.”  Gordon sat back down on his
couch, and appellant and the complainant were having a “normal guys’
conversation” in the kitchen.  At some
point, the complainant borrowed Gordon’s telephone to make a call.  When he hung up the telephone, the
complainant called to appellant.  Gordon
then saw appellant and the complainant “hugging like homeboys” in the kitchen
area of the apartment.  Suddenly, Gordon heard
several pops, which he knew to be the sound of gunfire, coming from the
kitchen.  Gordon looked toward the
complainant and appellant and noted that “they were still hugging.”  Gordon then went to get his girlfriend, who
was in the apartment, and they went to the bedroom of the apartment to get “out
the back.”  Although Gordon lowered
himself down to the ground from the balcony of his second-story apartment, his girlfriend
could not get over the rail of the balcony and exit the apartment.  As Gordon tried to coax his girlfriend down,
he saw a neighbor and asked him to call for emergency assistance.  Gordon then returned to his apartment, where he
saw the complainant lying dead in the doorway of the apartment’s kitchen.  On cross-examination, Gordon stated that he drank
“some beer” on the date of the shooting.

           Houston Police Department (“HPD”) Officer J.
Racus testified that he responded to a call for emergency assistance regarding the
shooting.  When he arrived, he saw the
complainant’s body inside the apartment. 
Although officers found no firearms in the apartment, they did find
several shell casings in the apartment and removed two bullets from the
kitchen.   HPD Officer S. Kennedy
testified that after he identified appellant as a suspect in the shooting, he subsequently
received information that appellant had left Harris County.  Kennedy attempted to “track” appellant, and,
about four months later, he received information that appellant was in custody
in Rockville, Maryland.  Kennedy further
stated that a car that was “used in the murder” was located in Memphis,
Arkansas.

          Harris
County Medical Examiner M. Feeney testified that she performed the autopsy on
the complainant’s body and found that the complainant had a bullet lodged in
his head.  Feeney explained that the
“range of fire” was “pretty close, probably within about a foot or so,”  the complainant suffered other bullet wounds
or graze wounds, and the gunshot wounds caused his death.   

          Dr.
W. Davis, the Harris County Medical Examiner trace evidence manager, testified
that a test was performed on the complainant’s hands for gunshot residue and
there was no gunshot residue on the complainant’s hands.  On cross-examination, Davis agreed that he
did not know who did the testing of the complainant’s hands and could not
confirm that proper protocol was followed. 


Sufficiency of the Evidence

In his first point of error,
appellant argues that the evidence, although “probably” legally sufficient, is factually
insufficient to support his conviction because there is no evidence “of a
weapon,” “any prior altercation” between appellant and the complainant, or a motive
for a shooting.  Appellant also asserts
that the evidence identifying him as the shooter is only circumstantial and “weak”
because it is based on a single eyewitness’s “limited view” and is
“substantially outweighed by evidence suggesting that Gordon or another” was
the murderer.

We now review the factual
sufficiency of the evidence under the same appellant standard of review as that
for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010
WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.] November 10, 2010, no pet.
h.) (citing Brooks v. State,
PP-0210-09, 2010 WL 3894613, at *14, 21–22 (Tex. Crim. App. Oct. 6, 2010)).  Under this standard, we are to examine “the
evidence in the light most favorable to the prosecution” and determine whether
“a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”   Jackson
v. Virginia, 442 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979).  Under this standard, evidence is insufficient
when the “only proper verdict” is acquittal. 
Tibbs v. Florida, 457 U.S. 31,
41–42, 102 S. Ct. 2211, 2218 (1982).  

A person commits the offense of
murder if he intentionally or knowingly causes the death of an individual or if
he intends to cause serious bodily injury and commits an act clearly dangerous
to human life that causes the death of an individual.  Tex. Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003).

Gordon testified that appellant and
the complainant were hugging in the kitchen of his apartment both before and at
the time he heard gunshots.  After
hearing the gunshots, Gordon looked over at the men and saw that they were
still hugging.  Gordon then checked on his
girlfriend, and they attempted to leave the apartment from a balcony connected
to the back bedroom of the apartment.  After
Gordon managed to get down from the balcony, he went back up the stairs to
return to his apartment, and he found the complainant’s body bleeding from  gunshot wounds.  Dr. Feeney testified that, based upon her
autopsy findings, the “range of fire” for the gunshots that killed the
complainant was “pretty close” and was “probably within about a foot or
so.”   

It is well established that the
testimony of a single eyewitness may be legally sufficient to support a conviction
of a criminal offense.  Proctor v. State, 319
S.W.3d 175, 185 (Tex.  App.—Houston [1st Dist.] 2010, pet. denied).  Although Gordon did not testify that he saw
either man with a gun, Gordon’s testimony that he heard the gunshots at the
time appellant and the complainant were hugging is significant in light of Dr. Feeney’s
testimony that the complainant was shot in close range and “probably” within a
foot.  Even without evidence related to
what appellant and the complainant were discussing at the time, and even
without proof of any clear motive, the jury could have found, based upon
Gordon’s and Feeney’s testimony, that appellant was the only person that could
have shot the complainant.  See Clayton v. State, 235 S.W .3d 772, 781
(Tex. Crim. App. 2007) (stating that motive is not element of murder, even
though “it may be a circumstance indicative of guilt”); Pitonyak v. State, 253 S.W.3d 834, 844–45 (Tex. App.—Austin 2008, pet. ref’d) (stating that State
did not have to prove that appellant had motive for murder).  The jury could have also drawn an inference
of guilt based upon the testimony of Gordon and the officers, which
demonstrated that appellant had left the scene and the State following the
shooting.  Clayton, 235 S.W.3d at 780 (recognizing that factfinder may draw
inference of guilt from “circumstance of flight” and stating that defendant’s
flight “constitute[d] an additional piece of incriminating circumstantial
evidence”).  

Viewing the evidence in the light
most favorable to the prosecution, we conclude that a rational trier of fact
could have found beyond a reasonable doubt that appellant committed the offense
of murder by shooting the complainant.  Accordingly,
we hold that the evidence is sufficient to support appellant’s conviction.

We overrule appellant’s first point
of error.

Ineffective Assistance of Counsel

In his second point of error,
appellant argues that his trial counsel rendered ineffective assistance at both
the guilt and punishment phases of trial because counsel “asked no questions of
any witness that arguably constructed any defense” and, at punishment,
“effectively present[ed] no evidence [of] justification or mitigation to the
jury.”  Appellant asserts that trial
counsel failed to “summarize the evidence in a light favorable to the defense
through argument,” commented that the jury might have thought that Gordon
“seemed pretty credible,” provided a limited cross-examination of Gordon, did
not effectively explore the relationship between the complainant and appellant
or the circumstances surrounding the shooting, did not inquire as to whether Gordon’s
girlfriend had provided a statement to police officers, did not ask Gordon the
name of the neighbor who called for emergency assistance, did not introduce
appellant’s statement, and did not effectively cross-examine the police officers
or medical examiner witnesses.  Appellant
also asserts that trial counsel rendered ineffective assistance when he asked appellant’s
mother, during the punishment phase, about what had happened to cause the
shooting.  

The standard of review for
evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064 (1984).  Strickland generally requires a two-step
analysis in which an appellant must show that (1) counsel’s performance fell
below an objective standard of reasonableness, and (2) but for counsel’s
unprofessional error, there is a reasonable probability that the result of the
proceedings would have been different.  Id. at 687–94, 104 S. Ct. 2064–2068; Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).  A reasonable
probability is a “probability sufficient to undermine confidence in the
outcome.”  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  In reviewing counsel’s performance, we look to
the totality of the representation to determine the effectiveness of counsel,
indulging a strong presumption that his performance falls within the wide range
of reasonable professional assistance or trial strategy.  Robertson
v. State, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); Thompson,
9 S.W.3d at 813. 

A failure to make a showing under
either prong defeats an ineffective-assistance claim.  Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Allegations of
ineffectiveness must be firmly founded in the record.  See Thompson, 9 S.W.3d at 813; Bone v. State, 77 S.W.3d 828, 833 &
n.13 (Tex. Crim. App. 2002).  In the
absence of evidence of counsel’s reasons for the challenged conduct, an
appellate court commonly will assume a strategic motivation if any can possibly
be imagined, and will not conclude the challenged conduct constituted deficient
performance unless the conduct was so outrageous that no competent attorney
would have engaged in it. Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

In regard to trial counsel’s closing
argument, he focused on the lack of evidence presented by the State to support such
a significant charge as murder against appellant.  Counsel noted that, other than Gordon, the
State had failed to present testimony from any other witness present at the
apartment complex at the time of the shooting. 
Counsel highlighted the absence of testimony from Gordon’s girlfriend,
who he claimed was in the apartment at the time of the shooting, and Gordon’s
neighbor, who he claimed had called for emergency assistance after the shooting.  Counsel also noted that the State had failed
to introduce into evidence a recording of the call for emergency assistance.  Our review of counsel’s closing argument
demonstrates that counsel did summarize the evidence in appellant’s favor, and he
presented a substantial argument that the State had failed to meet its burden
of proof.  

In regard to trial counsel’s
comments on Gordon’s credibility, although he suggested that the jury might
initially find Gordon to be credible, he argued that the jury should be
skeptical of Gordon’s testimony for several reasons.  Counsel noted that the events had occurred
three years prior to trial and Gordon had significant time to “think about his
testimony, to adopt, to figure out what kind of attitude he wants to adopt.”  Counsel explained that Gordon should have
been considered a suspect and that Gordon and his girlfriend were “connected to
the scene.”  Counsel asserted that
Gordon’s testimony that he had heard a “couple” of gunshots did not match with
the evidence showing that police officers had recovered at least six shell casings
inside the apartment.  Counsel stressed
that Gordon was the only witness presented by the State, and he argued that
Gordon’s version did not “make sense.”  Counsel
also stressed that appellant faced the very serious charge of murder, and yet
the State had presented only minimal evidence against him.

In regard to trial counsel’s
cross-examination of Gordon, he elicited from Gordon the admission that Gordon
had been drinking beer on the day of the shooting.  Gordon had already testified that he had not sensed
any hostility between the complainant and appellant at the time of the
shooting.  This testimony, provided by
Gordon on direct examination, was favorable to appellant.  Moreover, Gordon had simply described the men
as “hugging” at the time of the shooting, and he did not testify that he saw a
weapon.  Counsel could have deliberately chosen
to avoid any further inquiry of Gordon on cross-examination about any details
of the appellant’s relationship with the complainant or the circumstances at
the time of the shooting.  Counsel could
have reasonably been concerned that Gordon’s answers to such questioning could have
provided the jury with a better understanding of a motive for the shooting and
the circumstances surrounding the shooting. 
In his closing arguments, counsel emphasized the limited nature of
Gordon’s testimony, and he argued that it created reasonable doubt.  

Additionally, Gordon had already
explained in his direct testimony that he only had a “casual” relationship with
both the complainant and appellant, and Gordon’s testimony indicated that he
may have had no information as to why the shooting occurred.  Gordon had also stated that he did not know
the neighbor who had called for emergency assistance and was no longer dating the
woman who was with him in the apartment on the day of the shooting.  In sum, counsel could have reasonably
believed that the lack of detailed evidence presented by the State regarding
the relationship between appellant and the complainant, the circumstances
surrounding the shooting, and the motive for the shooting was favorable to the
defense and created a substantial argument for the existence of reasonable
doubt.  In fact, this was the primary
theme in counsel’s closing argument. 
Counsel forcefully argued that the State had poorly investigated the shooting
and had poorly presented the case to the jury based solely on a single
eyewitness whose testimony did not “make sense.” 

          In
regard to the trial counsel’s efforts to challenge the testimony presented by
the police officers and the medical examiners, counsel effectively
cross-examined Davis, the trace evidence manager, when he elicited from Davis the
admission that he did not know who had tested the complainant’s hands for gun
residue and that he could not confirm that proper protocol had been followed in
this testing.  With these admissions,
counsel sought to create doubt as to whether the complainant had been armed or
had fired a gun during the incident.  Appellant’s
counsel also cross-examined Officer Dacus, and with his questioning sought to
suggest that the officers who had arrived on the scene initially had not conducted
an adequate search to determine if there were any firearms in the apartment.  During closing arguments, counsel argued that
the State’s failure to introduce a firearm into evidence suggested that
reasonable doubt existed as to appellant’s guilt.  

We also note that, during the
State’s direct examination of Officer Kennedy, trial counsel objected to
testimony that would have further supported an inference of appellant’s flight from
Texas after the shooting.  Moreover,
during the State’s closing arguments, appellant’s counsel vigorously objected
to multiple arguments presented by the State that were not supported by the
record.  The trial court sustained several
of these objections and also instructed the jury, pursuant to counsel’s
request, to disregard certain arguments made by the State.  For example, pursuant to counsel’s request,
the trial court instructed the jury to disregard the State’s argument that
Gordon’s version of events had been consistent with a prior statement because
no such statement was in evidence.   

Finally, in regard to appellant’s
complaint that his trial counsel did not introduce his prior statement into
evidence, we note that his statement was 
hearsay.  See Tex. R. Evid.
801(d).  Also, appellant did not file a
motion for new trial, and, thus, there is nothing in the record to indicate why
appellant’s counsel did not attempt to introduce appellant’s statement into
evidence.   He could have concluded that
any attempt would have been futile.  There
is also nothing in the record to indicate that Gordon’s girlfriend provided a
statement to police officers or that any such statement would have been helpful
to appellant.  In sum, appellant has not,
in regard the guilt phase, demonstrated that his trial counsel’s performance fell
below an objective standard of reasonableness. 


In regard to appellant’s challenge
of his trial counsel’s performance at the punishment phase of trial, he specifically
complains about the following question that counsel posed to his mother: “What
was going on that day, what happened between them to cause [appellant] to shoot
him?”  Appellant complains that there
could have been no purpose “to admit from [his] mother that he shot the
complainant” in an effort to establish mitigating circumstances.  At the time of the punishment phase, the jury
had convicted appellant of the complainant’s murder.  Based upon the challenged question and the
series of following questions, appellant’s counsel appears to have been
attempting to introduce information to explain the circumstances surrounding
the shooting in an effort to ask for leniency in punishment.  The State immediately objected, and
appellant’s mother was not permitted to answer the specific question.  However, in response to a subsequent question,
appellant’s mother described appellant as a good person and she stated that he
was not a “cold-blooded killer.”  With
this testimony, in addition to her testimony that she still “struggle[d]” to
understand what had happened, counsel sought to suggest to the jury that
appellant deserved mercy even though the complainant had been killed.  Counsel also introduced evidence that
appellant had never been convicted of any felonies.  In sum, appellant has not, in regard to the punishment
phase, demonstrated that his trial counsel’s performance fell below an
objective standard of reasonableness.  Accordingly,
because appellant has not demonstrated that his trial counsel’s actions fell
below an objective standard of reasonableness, we hold that appellant has not
satisfied Strickland’s first prong.

          We
overrule appellant’s second point of error.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).

 











[1]           Tex.
Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003).